UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: MAKWA BUILDERS, LLC

    Debtor.    Case No. 12-13664

NEW MEXICO HIGHLANDS UNIVERSITY

    Plaintiff,

v.    Adv. No. 12-01305

MAKWA BUILDERS, LLC,

    Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Motion for Abstention and Remand ("Motion") filed by New Mexico Highlands University ("NMHU"). *See* Docket No. 8. NMHU asks the Court to abstain from adjudicating the arbitrability of a construction dispute between itself and Makwa Builders, LLC ("Makwa") pursuant to 28 U.S.C. § 1334(c)(2). Makwa opposes the Motion, and the issues have been briefed at length. The Court held an evidentiary hearing on the issue of mandatory abstention on May 2 and 3, 2013 and took the matter under advisement.[1] After considering the Motion and responses thereto, the arguments of counsel, the evidence, and applicable law, the Court concludes that the Motion should be granted insofar as it seeks abstention under 28 U.S.C. § 1334(c)(2).

### FINDINGS OF FACT

In 2005 Dan Lowrie formed Makwa Builders, LLC, a construction company organized under the laws of New Mexico. Makwa specializes in the construction and renovation of

---

[1] Shortly after the parties gave closing arguments, they asked the Court to defer its decision while they engaged in settlement negotiations. In late November of 2013, the parties reported that such negotiations were unsuccessful and asked the Court to rule on the issue of mandatory abstention.

schools, and primarily bids on public works projects. In order to perform such projects, Makwa must be bonded. Dan Lowrie is the owner and principal member of Makwa. Prior to that, he worked for his mother's company, Pace Pacific Corp. ("Pace"). Pace performed concrete work on approximately 50-60% of Makwa's jobs. The companies also shared several employees. Makwa currently has no active construction projects and no employees.

In April 2010, NMHU issued an invitation to bid on a contract to construct a new student center on its campus (the "Construction Contract"). Shortly thereafter, NMHU's Board of Regents (the "Board") met with Dan Lowrie and awarded the Construction Contract - which had a contract price of approximately $60 million - to Makwa. On June 15, 2010, NMHU's President, Dr. James Fries, signed the Construction Contract on behalf of NMHU. The Construction Contract contains a provision requiring arbitration of disputes between NMHU and Makwa. It provides, in relevant part:

> For any Claim subject to, but not resolved by mediation …, the method of binding dispute resolution shall be as follows:
>
> [X]  Arbitration pursuant to Section 15.4 of AIA Document A201-2007.

*See* Construction Contract, § 6.2.

NMHU's Board did not specifically approve the arbitration provision itself, nor did the Board - in delegating its authority to Dr. Fries - specifically refer to arbitration in such delegation.

Between 2010 and 2012, Makwa served as the general contractor on the NMHU project and hired various subcontractors. Contracts between Makwa and its subcontractors contain a "pay when paid" clause, meaning that Makwa is generally not required to pay the subcontractors unless and until NMHU pays Makwa. Great American Insurance Co. ("Great American") issued payment and performance bonds to Makwa in connection with the NMHU project. Makwa obtained bonding from Great American using the combined financial statements of both Makwa

2

and Pace. Dan Lowrie's father, Terry Lowrie, agreed to indemnify Great American to the extent of its losses.

Makwa asserts that in May 2011 it began to encounter problems on the NMHU project. Makwa also contends that NMHU breached the Construction Contract when NMHU terminated it for convenience on February 27, 2012. On September 11, 2012, NMHU filed a complaint in the Fourth Judicial District Court of New Mexico (the "State Court"), styled *New Mexico Highlands University v. Makwa Builders, LLC*, Case No. D-412-CV-2012-00437, seeking a declaratory judgment that the arbitration provision in the Construction Contract is void and unenforceable (the "Declaratory Judgment Action"). NMHU contends that pursuant to New Mexico law (N.M.S.A. 1978 § 21-3-4), its Board has the exclusive authority to select the forum in which it can sue and be sued and that the Board could not delegate such authority to NMHU's President. NMHU argues that the arbitration provision is invalid because the Board did not specifically approve it. Makwa disagrees and intends to seek to compel arbitration of its construction dispute with NMHU. Only the question of arbitrability - not the underlying construction dispute - is currently at issue in the Declaratory Judgment Action.

Makwa filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 3, 2012. Makwa removed the Declaratory Judgment Action to the Bankruptcy Court on November 6, 2012, thereby commencing this adversary proceeding. Shortly thereafter, NMHU filed the Motion seeking abstention and remand. In December 2012, Makwa filed a motion in the United States Court for the District of New Mexico (the "Federal District Court") to withdraw the reference of this adversary proceeding. As grounds for withdrawal of the reference, Makwa argued that the Federal District Court, instead of the Bankruptcy Court, should certify the question of arbitrability to the New Mexico Supreme Court. Makwa wanted to avoid any

3

question about the authority of the Bankruptcy Court to certify an issue to the New Mexico Supreme Court. NMHU initially opposed the motion. However, in the summer of 2013, Makwa sought to withdraw its request to withdraw the reference and asked this Court to certify the question to the New Mexico Supreme Court. NMHU objected to Makwa withdrawing that motion. Makwa's motion to withdraw the reference and its subsequent request to withdraw that motion is pending before the Federal District Court.

By an order entered on January 8, 2014, the Court confirmed Makwa's First Amended Plan of Reorganization (the "Plan"). *See* Docket No. 310.[2] The Plan provides that various subcontractors associated with the NMHU project are entitled to payment if and when Makwa is paid. *See* Docket No. 246, ¶ 3.6.1. The confirmation order further provides that the Plan does not alter the legal, equitable, or contractual rights of any of those subcontractors. *See* Docket No. 310, ¶ (L)(i). Thus, under both the Plan and their contracts, it appears that subcontractors will not be paid until NMHU and Makwa resolve their construction dispute.

By obtaining confirmation of its Plan, Makwa hopes to: (1) restart its business; (2) become a certified contractor with the Section 8(a) Business Development Program (a "Section 8(a) Contractor"); and (3) pay the subcontractors and suppliers associated with the NMHU program. In order to perform the work it has traditionally done (*i.e.* federal works projects) and to become a Section 8(a) Contractor, Makwa needs to obtain bonding.[3] A number of

---

[2] Though the Plan and the confirmation order were not offered in evidence at the final hearing, the Court is entitled to consider entries on its own docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir.1979) (holding that a court may, sua sponte, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir.1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr.N.D.Ill.2013), aff'd, 498 B.R. 852 (N.D.Ill.2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

[3] To become a Section 8(a) Contractor, a business must also: (a) have operated for at least two years; and (b) be owned by a member of a disadvantaged class. Dan Lowrie is Native American and Makwa has

4

Case 12-01305-j   Doc 107   Filed 02/11/14   Entered 02/11/14 17:59:15 Page 4 of 12

subcontractors who have not received payment for their work on the NMHU project made claims against Makwa's surety, Great American.  Makwa cannot obtain bonding from Great American or other bonding companies while such claims remain outstanding.  Makwa's objective is to satisfy the bond claims from the funds it recovers under the Construction Contract and obtain bonding for new federal construction projects.

The bonds claims made by subcontractors and suppliers who worked on the NMHU project exceed $900,000.  Great American has only paid one subcontractor or supplier in connection with that project.  The bond claims made in connection with Makwa's other jobs have been substantially resolved.  Dan Lowrie believes that once the dispute with NMHU is resolved, he will be able to pay all subcontractors and suppliers, except for Pace.

At the final hearing, the parties offered evidence as to how quickly cases are typically resolved in the state and federal court systems in New Mexico.  Because of their respective case loads, civil cases are generally resolved more rapidly in the State Court than in the Federal District Court.  The Federal District Court has more filings than any other federal court in the Tenth Circuit.  The majority of those filings involve criminal cases, with attendant speedy trial requirements.  The median time from filing to trial for civil cases in the Federal District Court ranges between approximately 17 and 29 months.  The median time from filing to disposition (other than a trial on the merits) for such cases ranges between approximately 7 and 9 months.[4]

---

operated since 2005; the bonding requirement is therefore the major impediment to Makwa becoming a Section 8(a) Contractor.

[4] In determining the median time from filing to trial or other disposition in the Federal District Court, the Court relied on the Federal Judicial Caseload Statistics and the Federal Court Management Statistics for the year 2012, which were admitted at trial as Exhibits 5 and 6.  After the trial, Makwa asked the Court to consider additional evidence and demonstrative exhibits which purport to correct and/or clarify allegedly misleading information contained in NMHU's Exhibit 12.  *See* Docket No. 69.  Because the Court did not rely on Exhibit 12 in making its ruling, it is unnecessary to consider any evidence which purports to impeach it.

5

In general, the State Court takes between approximately 4 and 7 months to dispose of a case.[5] Civil cases involving two-party contract disputes are typically disposed of in less than 6 months.[6] It generally takes between 9 and 19 months for the New Mexico Supreme Court to dispose of a case. If the New Mexico Supreme Court declines to grant certiorari, it generally makes that decision in 30-45 days. Neither party offered evidence regarding the Bankruptcy Court's caseload. However, based on the Court's knowledge of its own docket, the Court finds that the State Court can adjudicate the issues currently raised in the Declaratory Judgment Action in roughly the same time frame as this Court.

## DISCUSSION

NMHU asserts that the Court must abstain from hearing this adversary proceeding under 28 U.S.C. § 1334(c)(2) and remand the Declaratory Judgment Action to the State Court. Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding upon a State law claim or State law cause of action related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

Mandatory abstention under Section 1334(c)(2) applies when all of the following elements are met: "(1) the motion to abstain was timely; (2) the action is based on state law; (3) an action has been commenced in state court; (4) the action can be timely adjudicated in state court; (5) there is no independent basis for federal jurisdiction other than bankruptcy; and (6) the

---

[5] The median time from filing disposition varies based on whether the case was resolved by summary judgment, default judgment, or a trial on the merits.

[6] The Court is not suggesting that the underlying construction dispute between Makwa and NMHU would be adjudicated in 6 months. However, the only issue in the Declaratory Judgment Action is whether such dispute is arbitrable, which is principally a legal issue.

6

matter is non-core." *In re Telluride Income Growth, L.P.,* 364 B.R. 390, 398 (10th Cir. BAP 2007). Of those elements, only the fourth element - timely adjudication - is in dispute.

Whether an action can be timely adjudicated in state court requires more than an analysis of the relative speed of each forum. Courts examine a number of factors including:

> (1) the backlog of the state court and federal court's calendar; (2) the complexity of the issues to be resolved and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding and the status of the proceeding in state court prior to being removed; (4) whether the state court proceeding would prolong or delay the administration or liquidation of the estate; (5) whether the parties consented to the bankruptcy court entering a final judgment; (6) whether the parties have made a jury demand; and (7) whether the bankruptcy case is a reorganization or liquidation.

*See In re Midgard Corp.*, 204 B.R. 764, 778 (10th Cir. BAP 1997); *In re Mattson,* 448 B.R. 540, 546 (Bankr. D.Kan. 2011) (citing the above factors); *Parmalat Capital Finance Ltd. v. Bank of America Corp.,* 639 F.3d 572, 580 (2nd Cir. 2011) (listing similar factors).

"[T]imeliness must [also] be referenced against the needs of the title 11 case." *Power Plant Entertainment Casino Resort Indiana, LLC v. Mangano,* 484 B.R. 290, 297 (Bankr.D.Md. 2012) (quoting 1 *Collier on Bankruptcy* § 3.05).[7] "[E]ven a relatively brief delay might make state court adjudication untimely where the state action substantially affects the bankruptcy estate, or where the estate's resolution is contingent upon the state action." *Parmalat Capital Finance Ltd. v. Bank of America Corp.,* 671 F.3d 261, 270 (2nd Cir. 2012).

Here, most of the relevant factors suggest that the matter can be timely adjudicated in the State Court. The evidence offered by NMHU established that the State Court generally

---

[7] *See also Stoe v. Flaherty*, 436 F.3d 209, 219 (3rd Cir. 2006) ("[T]imeliness … must be determined with respect to needs of the title 11 case and not solely by reference to the relative alacrity with which the state and federal court can be expected to proceed."); *In re Province Grande Olde Liberty, LLC,* 2013 WL 2153214, *3 (Bankr.E.D.N.C. 2013) ("In general, courts focus on whether allowing the state court to hear the matter will have any unfavorable effect on the administration of the bankruptcy case."); *In re Drauschak,* 481 B.R. 330, 343 (Bankr.E.D.Pa. 2012) (noting that "the issue is whether an adjudication in state court would be consistent with the needs of the title 11 case"); *In re New 118th LLC,* 396 B.R. 885, 894 (Bankr.S.D.N.Y. 2008) (finding that mandatory abstention applied where the dispute did not affect the administration of the bankruptcy case).

7

adjudicates civil cases more quickly than the Federal District Court and in roughly the same timeframe as this Court. The issue presented (*i.e.* the enforceability of an arbitration clause) is fairly straightforward and routine. The State Court has expertise in construing New Mexico statutes and other issues governed by New Mexico law. NMHU contests the Bankruptcy Court's jurisdiction over this adversary proceeding and the underlying construction dispute and has not consented to this Court entering a final judgment. A Chapter 11 Plan has been confirmed.

Makwa did not present evidence at trial that the State Court itself would be unable to render a timely decision on the issue of arbitrability. Instead, Makwa contends that remanding the Declaratory Judgment Action will impair its ability to consummate the Plan. According to Makwa, commencing the litigation in the State Court, rather than a federal court, could force it to spend a large amount of time and money pursuing multiple appeals. In an attempt to avoid delays associated with the appellate process, Makwa wants this Court or the Federal District Court to certify the question of arbitrability directly to the New Mexico Supreme Court. That way, according to Makwa, it will not run the risk of having to adjudicate the underlying construction dispute in a court of law and then relitigate the issues in arbitration years later after all appeals are exhausted.

The Court is sympathetic to the fact that Makwa and NMHU have been embroiled in a prolonged, contentious dispute and that any further delay will impact Makwa's ability to pay creditors and to conduct its business. In order to accept Makwa's arguments, however, the Court would have to assume that: (1) the State Court will render a decision adverse to Makwa; (2) the State Court's decision would be reversed on appeal; (3) either this Court or the Federal District Court will certify the question of arbitrability to the New Mexico Supreme Court; and (4) the

8

Case 12-01305-j    Doc 107    Filed 02/11/14    Entered 02/11/14 17:59:15 Page 8 of 12

New Mexico Supreme Court will accept certification. The Court is not convinced that any of those events will occur.

First, this Court has no reason to assume that the State Court will render a decision adverse to Makwa. Even if Makwa disagrees with the State Court's decision, the prospect of appeal exists in every case. An analysis of whether the parties will appeal, whether the New Mexico Court of Appeals will issue a stay pending appeal, and how many appeals Makwa would have to lodge to get to arbitration would require pure speculation.

Further, Makwa has provided no authority, nor has the Court's research revealed any authority, indicating that the speed of the entire appellate process should be considered when evaluating whether an action can be timely adjudicated in state court. On the contrary, courts focus on the potential backlog of the state *trial* calendar. *See, e.g., WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.,* 75 F.Supp.2d 596, 606 (S.D.Tex. 1999) (remanding case where state court "trial calendar [wa]s not congested"); *Lemmings v. Second Chance Body Armor, Inc.,* 328 B.R. 228, 233 (N.D.Okla. 2005) (remanding the case upon finding that "there would be little impact on the bankruptcy estate by the trial of [the] matter in state court").[8] In many cases, the "timely adjudication" prong is satisfied by the mere existence of a trial setting in state court. *See, e.g., Gassman v. Gassman, Griper, & Golodny,* 1997 WL 306439, *1 (S.D.N.Y. 1997) (finding that the "matters can be timely adjudicated in state court" because "they were set to go to trial when the bankruptcy petition was filed").[9] NMHU has therefore carried its burden by demonstrating that the State Court itself can timely adjudicate the matter.

---

[8] *See also In re Yobe,* 75 B.R. 873, 876 (Bankr.W.D.Pa. 1987) (abstaining upon finding that "the state trial courts in the appropriate county ha[d] cleared their backlog and would be able to proceed … on a timely basis"); *In re Marathon Home Loans,* 96 B.R. 296, 301 (E.D.Cal.1989) (finding that the matter could be timely adjudicated where the litigant received a statutory preference in selecting a trial setting).
[9] *See also Luevano v. Dow Corning Corp.,* 183 B.R. 751, 752 (W.D.Tex. 1995) ("[T]he matter can be 'timely adjudicated' in a state court …, as evidenced by the trial date set in state court."); *In re Leco*

9

Even if the Court were to consider the entire appellate process, however, the Court is not convinced that allowing Makwa to attempt to certify the question would substantially expedite the matter. The Declaratory Judgment Action does not appear to warrant certification to the New Mexico Supreme Court. Certification is governed by N.M.S.A. 1978 § 39-7-4, which provides that the New Mexico Supreme Court "may answer a question of law certified to it by a court of the United States ... if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of this state."[10] Although a federal court has the discretion to certify a question where "the legal … issue is novel and the applicable state law unsettled," certification "is not to be routinely invoked whenever a federal court is presented with" such issue. *Allstate Ins. Co. v. Brown*, 920 F.2d 664, 667 (10th Cir.1990); *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir.1988).[11] Similarly, the New Mexico Supreme Court typically only accepts certification of questions that "present a significant question of law under the New Mexico Constitution" or questions of "substantial public interest." *Schlieter v. Carlos*, 108 N.M. 507, 511, 775 P.2d 709, 713 (1989).

The issue presented here is not unusually novel, nor does it involve a significant matter of law or public interest. While no New Mexico court has addressed the issue of whether the board

---

*Enterprises, Inc.,* 144 B.R. 244, 252 (S.D.N.Y. 1992) (finding that the state court action can be adjudicated for purposes of Section 1334(c)(2) where "the state court action [wa]s advancing towards a trial"); *Lennar Corp. v. Briarwood Capital LLC,* 430 B.R. 253, 265-266 (Bankr.S.D.Fla. 2010) (determining that the case could be "timely adjudicated" in state court where the action had been pending for months and had already been set for trial).

[10] NMRA 12-607 also provides:
> (1) The Supreme Court may answer by formal written opinion questions of law certified to it by a court of the United States, an appellate court of another state, a tribe, Canada, a Canadian province or territory, Mexico or a Mexican state if the answer may be determinative of an issue in pending litigation in the certifying court and the question is one for which answer is not provided by a controlling:
>> (a) appellate opinion of the New Mexico Supreme Court or the New Mexico Court of Appeals; or
>> (b) constitutional provision or statute of this state.

[11] *See also Society of Lloyd's v. Reinhart,* 402 F.3d 982, 1001 (10th Cir. 2005) (noting that in most cases, "federal courts have the duty to decide … difficult or uncertain" questions of state law).

10

Case 12-01305-j    Doc 107    Filed 02/11/14    Entered 02/11/14 17:59:15 Page 10 of 12

of regents at a public university must specifically approve an arbitration provision in any contract signed on behalf of the university, there is an abundance of controlling authority addressing arbitration more generally. Thus, a court would likely either rule that it is clear under New Mexico law that the underlying construction dispute is not arbitrable or resolve any doubt in favor of arbitration. *See, e.g., Luginbuhl v. City of Gallup,* 302 P.3d 751, 757 (N.M. Ct.App. 2013) (noting that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").[12] Further, the statute relating to the appointment, qualifications, and powers of a board of regents, N.M.S.A. 1978 § 21-3-4, is relatively straightforward.[13] It therefore does not appear that the issue of arbitrability would be resolved by certification even if this adversary proceeding were not remanded.

Finally, Makwa has not demonstrated that allowing the State Court to hear the matter will adversely affect the administration of the bankruptcy estate. As previously noted, a Chapter 11 Plan has been confirmed. Makwa is correct that consummation of the Plan is contingent upon the resolution of the Declaratory Judgment Action and the underlying construction dispute. The Court also believes that obtaining a quick decision as to whether the construction dispute is arbitrable would benefit all parties involved, including the subcontractors associated with the

---

[12] *See also Durham v. Guest,* 145 N.M. 694, 702, 204 P.3d 19, 27 (2009) ("New Mexico has a strong public policy in favor of arbitration as a form of dispute resolution."); *Clay v. New Mexico Title Loans, Inc.,* 288 P.3d 888, 892 (N.M. Ct.App. 2012) (noting that under New Mexico and federal law, "[a]rbitration is a highly favored form of dispute resolution") (internal quotations omitted).
[13] That statute provides:
> Said normal schools [universities] shall each be controlled and managed by a board of regents consisting of five members to be appointed by the governor, by and with the advice and consent of the senate for a term of four years, and not more than three of whom shall belong to the same political party at the time of their appointment. The members of such board shall be qualified electors of the state and owners of real estate therein. Each such board shall constitute a body politic and corporate, and shall have power to sue and be sued, to contract and be contracted with, and the title to all property belonging to each such normal school shall be vested in the respective corporate bodies and their successors.

N.M.S.A. 1978 § 21-3-4.

NMHU project. However, Makwa has failed to point to any delay on the part of the State Court. Instead, Makwa points to the *potential* delay that may occur if the State Court declines to compel arbitration, the New Mexico Court of Appeals declines to issue a stay pending appeal, and Makwa is forced to continue litigating, appealing, and possibly re-litigating the dispute. As explained above, the Court will not base its decision on contingencies that are entirely speculative. Consequently, there is no reason to believe that the subcontractors will be paid faster, or that Makwa will accomplish its other goals, if a federal court, rather than the State Court, adjudicates the matters currently at issue in the Declaratory Judgment Action.

The Court concludes that the matter can be timely adjudicated by the State Court. The Court must therefore abstain from hearing the Declaratory Judgment Action pursuant to Section 1334(c)(2) and remand the Declaratory Judgment Action.

## CONCLUSION

Based on the foregoing, NMHU's Motion will be granted, insofar as it seeks abstention under 28 U.S.C. § 1334(c)(2). The Declaratory Judgment Action will be remanded to the State Court. The Court will enter a separate order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Entered on: February 11, 2014

Copies to:

| | |
|---|---|
| Gail Gottlieb, Mariposa Padilla Sivage, & Traci Olivas<br>PO Box 1945<br>Albuquerque, NM 87103-1945 | Louis Puccini, Jr<br>PO Box 50700<br>Albuquerque, NM 87181-0700 |

Robert J Berens & Adam Melton
76 East Mitchell Drive
Phoenix, AZ 85012